**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

JANIE R. WAINWRIGHT                                                                          PLAINTIFF

v.                                           No. 5:12CV00334 JLH

DAVIS NURSING ASSOCIATION;
and DAVIS LIFE CARE CENTER                                                           DEFENDANTS

**OPINION AND ORDER**

Janie R. Wainwright formerly was employed by Davis Nursing Association, d/b/a Davis Life Care Center. Her employment was terminated effective November 10, 2011. Wainwright contends that the termination was unlawful because it violated the Family and Medical Leave Act, it was based on her race, her sex, her pregnancy, her disability, and it was done in retaliation for reporting an incident in which a white employee made a racial slur concerning a resident of the nursing home. Wainwright also alleges that she was subjected to a hostile work environment and that Davis Life Care Center committed the tort of outrage. Her complaint cites 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 2000e *et seq.*, 29 U.S.C. § 2612, 42 U.S.C. § 2612, 42 U.S.C. § 12112(b), 42 U.S.C. § 12131, and 29 U.S.C. § 206(d),[1] and the Arkansas Civil Rights Act of 1993, Ark. Code Ann. § 16-123-101 *et seq*.

Davis Life Care Center has filed a motion for summary judgment, and Wainwright has responded. For reasons that will be explained, Davis Life Care Center's motion for summary judgment is granted.

---

[1] Twenty-nine U.S.C. § 206(d) is the Equal Pay Act of 1963. It prohibits, among other things, discrimination on the basis of sex and paying wages to employees. Despite the citation in her complaint, Wainwright never alleges in her complaint that she was paid less than male employees, nor have the parties addressed the Equal Pay Act as a part of her claims in this action.

**I.**

A court should enter summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). The moving party bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets this burden, the nonmoving party must respond by coming forward with specific facts establishing a genuine dispute for trial. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). In deciding a motion for summary judgment, a court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *PHL Variable Ins. Co. v. Fulbright McNeill, Inc.*, 519 F.3d 825, 828 (8th Cir. 2008). A genuine dispute exists only if the evidence is sufficient to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. When a nonmoving party cannot make a showing sufficient to establish a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23, 106 S. Ct. at 2552.

**II.**

Wainwright was hired by Davis Life Care Center as a staff registered nurse on September 2, 2009. Document #1 at 3. On December 20, 2009, she was promoted to registered nurse supervisor. *Id*. Her job included supervising the care of forty-five to fifty-five residents in the facility and at times

supervising the entire building of 140-60 residents. *Id*. She supervised two licensed practical nurses and six to eight certified nurse technicians. *Id*.

On March 25, 2011, another employee reported to Wainwright that she had witnessed a third employee, Amanda Nelson, verbalize an offensive racial slur to an African American resident. *Id*. Specifically, Nelson referred to the African American resident as "an Aunt Jemimia." Document #20-5 at 1. Wainwright reported this slur to the administration of Davis Life Care Center, who investigated the incident and counseled Nelson. Document #12-4. Wainwright then reported the matter to the Office of Long-Term Care, which regulates nursing homes in Arkansas. Document #20-1. The Office of Long-Term Care found the complaint to be unfounded. Document #12-6 at 2. Following these reports, a supervisor began yelling at Wainwright in front of other employees and began treating her differently because she was offended by the racially-charged statement. Document #20-1.

Wainwright was pregnant during 2011 and took several weeks of leave. The policy of Davis Life Care Center is that any leave that qualifies for purposes of FMLA leave is counted as FMLA leave even if the employee is eligible for paid leave during some or all of that time either as personal time off or as sick leave. Document #20-4 at 2. Wainwright began FMLA leave on August 8, 2011. Document #12-7 at 6. She was informed that her FMLA leave would be exhausted on October 30, 2011. *Id*. That date was subsequently extended to November 8, 2011. Document #12-8.

Wainwright delivered a child by cesarean section on October 5, 2011. Document #12-7 at 2. Her doctor wrote that she needed to remain off work until November 30, 2011. Document #12-7 at 2 and Document #20-3. Wainwright did not return to work. Document #12-7 at 2.

On November 11, 2011, the human resources department of Davis Life Care Center wrote Wainwright a letter explaining that her FMLA leave was exhausted on November 8, 2011. Document #12-8. The letter informed Wainwright that with her FMLA leave exhausted, her position was no longer protected, and her unpaid leave had not been approved, so her employment was terminated effective November 10, 2011. *Id*.

On December 20, 2011, Wainwright filed a charge of discrimination with the Equal Employment Opportunity Commission. Document #12-1. She checked the boxes for discrimination based on race, sex, and retaliation, but not disability. *Id*. The EEOC issued a right to sue letter on May 30, 2012. Wainwright commenced this action by filing a complaint on August 28, 2012.

**III**.

As noted, Wainwright brings her claims pursuant to the Arkansas Civil Rights Act as well as a variety of federal statutes. The Arkansas courts look to federal precedent for guidance in interpreting the Arkansas Civil Rights Act. Ark. Code Ann. § 16-123-105(c). Disparate treatment claims under 42 U.S.C. § 1981, 42 U.S.C. § 1983, Title VII, the ADA and the Arkansas Civil Rights Act are analyzed in the same manner. *Evance v. Trumann Health Servs., LLC*, 719 F.3d 673, 677 (8th Cir. 2013); *Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 681 (8th Cir. 2012); *Stoner v. Ark. Dept. of Correction*, No. 3:10CV00218 KGB, 2013 WL 6061651, at *12 (E.D. Ark. Nov. 18, 2013). Neither party has argued that the protections offered by the Arkansas Civil Rights Act are broader or narrower than the federal statutes, so the Court's rulings on Wainwright's federal claims will apply equally to her corresponding state-law claims. *Hess v. Ables*, 714 F.3d 1048, 1054 (8th Cir. 2013).

A.   **Family and Medical Leave Act**

The FMLA provides that an eligible employee is entitled to a total of twelve work weeks of leave during any twelve-month period because of the birth of a son or daughter or because of a serious health condition that makes the employee unable to perform the functions of the position. 29 U.S.C. § 2612(a)(1)(A) and (C). "An FMLA entitlement claim arises when an employer denies or interferes with an employee's substantive FMLA rights." *Hager v. Arkansas Dept. of Health*, 735 F.3d 1009, 1015 (8th Cir. 2013). The employee bears the initial burden of proof to show that she was entitled to a denied FMLA benefit. *Ballato v. Comcast Corp.*, 676 F.3d 768, 772 (8th Cir. 2012).

Wainwright asserts that she did not exhaust her FMLA leave, but the undisputed facts show that she did. As noted, her FMLA leave began on August 8, 2011. By November 8, 2011, Wainwright had exhausted all of her FMLA leave. After Wainwright's child was born on October 5, 2011, her physician wrote that she should be on medical leave until November 30, 2011. Document #12-7 at 1; Document #20-3. Wainwright testified that she understood that if she stayed off work until November 30, 2011, her FMLA leave would have been exhausted before she returned to work. Document #12-7 at 2. Thus, the termination of Wainwright's employment effective November 10, 2011, did not interfere with her substantive rights under the FMLA leave.

B.   **Race Discrimination**

Wainwright also contends that the termination of her employment was an act of race discrimination. She presents no direct evidence of race discrimination, so her claim must be analyzed under the *McDonnell Douglas* burden-shifting framework. *Burton v. Arkansas Secy. of State*, 737 F.3d 1219, 1229 (8th Cir. 2013). Under this framework, Wainwright must show that (1) she is a

member of a protected class, (2) she met her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination. *Id*. Wainwright may satisfy the fourth part of a prima facie case in a variety of ways, such as showing more favorable treatment of similarly-situated employees who are not in the protected class. *Id*. If she meets her burden of establishing a prima facie case, Davis Life Care Center must provide a legitimate, nondiscriminatory reason for the termination that rebuts Wainwright's prima facie case. *Id*. If Davis Life Care Center does so, the presumption of discrimination disappears, and Wainwright must prove that the proper justification was merely a pretext for discrimination. *Id*.

Wainwright has not presented evidence to establish a prima facie case of racial discrimination. First, she was not meeting the legitimate expectations of her employer because she did not return to work after her FMLA leave was exhausted, nor did she obtain approval for additional unpaid leave. Second, she has presented no evidence of circumstances that would give rise to an inference of discrimination.

Assuming, for the sake of argument, that Wainwright has met her burden of establishing a prima facie case, she cannot show that the reason for her termination—that her FMLA leave expired and she did not return to work—was a pretext for racial discrimination. She says in an affidavit that there were white employees who used FMLA leave due to illness associated with pregnancy but were not terminated, Document #20-1, and she specifically identifies one white employee who used FMLA leave due to illness associated with pregnancy and the care of a newborn but was not terminated. Document #20-5. She presents no evidence, however, that any white employee failed to return to work after exhausting FMLA leave but was not terminated. At the pretext stage, the test for determining whether employees are similarly situated is rigorous. *Bone v. G4S Youth Servs., LLC*,

6

686 F.3d 948, 956 (8th Cir. 2012). Wainwright must show that she and her comparators were "similarly situated in all relevant respects." *Id.* Comparators must have dealt with the same supervisor, been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances. *Id.* Because Wainwright presents no evidence that any white employee of Davis Life Care Center exhausted FMLA leave, failed to return to work, and yet was not terminated, she has failed to show that any comparators were similarly situated in all relevant respects. Thus, she has failed to show that the stated reason for her termination was a pretext for racial discrimination.

**C.    Sex and Pregnancy Discrimination**

Title VII and the Arkansas Civil Rights Act prohibit employers from discriminating based on sex with respect to compensation, terms, conditions, or privileges of employment. *McCullough v. Univ. of Arkansas for Med. Sciences*, 559 F.3d 855, 860 (8th Cir. 2009) (citing 42 U.S.C. § 2000e-2(a)(1) and Ark. Code Ann. § 16-127-107). In 1978, Congress amended Title VII by passing the Pregnancy Discrimination Act, which makes it clear that discrimination on the basis of sex includes discrimination on the basis of pregnancy, childbirth, or related medical conditions. *AT&T Corp. v. Hulteen*, 556 U.S. 701, 705, 129 S. Ct. 1962, 1967, 173 L. Ed. 2d 898 (2009) (citing 42 U.S.C. § 2000e(k)). The Arkansas Civil Rights Act contains a comparable provision. Ark. Code Ann. § 16-123-102(1). As with respect to race discrimination, an employee may establish sex discrimination either by direct evidence or under the *McDonnell Douglas* burden-shifting framework. *McCullough*, 559 F.3d at 860-61; *Greenlee v. J.B. Hunt Transport Servs.*, 2009 Ark. 506, 342 S.W.3d 274, 278-79 (Ark. 2009).

Wainwright's sex discrimination claims fail for the same reasons that her race discrimination claims fail. Wainwright cannot show that she was meeting her employer's legitimate expectations because she failed to return to work when her FMLA leave expired. Moreover, she has presented no evidence of males at Davis Life Care Center who failed to return to work after exhausting FMLA leave but were not terminated. Similarly, she has presented no evidence that Davis's policy does not apply uniformly regardless of sex or pregnancy. *Cf. Kucharski v. Cort Furn. Rental*, 342 Fed. Appx. 712 (2nd Cir. 2009); *Equal Employment Opportunity Comm'n v. Southwestern Elec. Power Co.*, 591 F. Supp. 1128, 1135 (W.D. Ark. 1984); *Greenlee*, 342 S.W.3d at 281.

**D.     Disability Discrimination**

Wainwright also contends that her termination violated the Americans With Disabilities Act. Davis Life Care Center contends that this claim fails for two reasons. First, Wainwright did not check the box for disability discrimination on her EEOC charge; and, second, pregnancy is not a disability within the meaning of the Americans With Disabilities Act.

The Americans With Disabilities Act incorporates by reference the procedures in Title VII, including the requirement that an employee alleging discrimination file an EEOC charge. *McSherry v. Trans World Airlines*, 81 F.3d 739, 740 n.3 (8th Cir. 1996) (citing 42 U.S.C. § 12117(a) and 42 U.S.C. § 2000e-5(e)(1), (f)(1)). If the EEOC gives an individual a right-to-sue letter, "the charge limits the scope of a subsequent civil action because 'the plaintiff may [only] seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge.'" *Cottrill v. MFA, Inc.*, 443 F.3d 629, 634 (8th Cir. 2006) (quoting *Nichols v. Am. Nat'l Ins. Co.*, 154 F.3d 875, 887 (8th Cir. 1998)).

Here, Wainwright did not check the box for disability, nor does the narrative portion of her EEOC charge give notice that she is making any claim under the Americans With Disabilities Act. The narrative portion of the EEOC charge references her pregnancy, but, as noted, a claim of pregnancy discrimination falls under the category of sex discrimination, not disability discrimination, and Wainwright did check the box for sex discrimination. Thus, Wainwright failed to exhaust her administrative remedies on a claim of disability discrimination.

Even if Wainwright had exhausted her administrative remedies with respect to a claim of disability discrimination, that claim would fail. To establish disability discrimination, Wainwright must demonstrate that (1) she had a disability as defined in the ADA, (2) she was a "qualified individual," which means that she was able to perform the essential functions of her job, and (3) Davis Life Care Center took an adverse action against her on account of her disability. *Young v. United Parcel Serv., Inc.*, 707 F.3d 437, 443 (4th Cir. 2013). "With near unanimity, federal courts have held that pregnancy is not a 'disability' under the ADA." *Id.* (quoting *Wenzlaff v. NationsBank*, 940 F. Supp. 889, 890 (D. Md. 1996); *see also Clegg-Mitchell v. Arkansas Dept. of Correction*, No. 4:06CV01605 WRW, 2007 WL 4548641, at *6 (E.D. Ark. Dec. 18, 2007) (holding that pregnancy is not a disability under the ADA). Under unusual circumstances, when there is a complication or condition that arises out of but is distinguishable from the pregnancy, that condition may constitute an impairment under the Americans With Disabilities Act. *Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 553 (7th Cir. 2011). Wainwright has presented no evidence, however, that her condition represented an unusual circumstance in which a pregnancy might constitute an impairment. Indeed, she has presented no evidence at all regarding her medical condition other than a doctor's note stating

that her pregnancy was confirmed by an ultrasound, that she had delivered a baby, and that she would be incapacitated until November 30, 2011. Document #20-3.

In short, Wainwright's ADA claim fails.

**E.     Retaliation**

As noted, Wainwright also contends that she was terminated from her employment in retaliation for her report of the racial slur by a co-worker. Wainwright does not specify whether she is asserting a retaliation claim under Title VII, 42 U.S.C. § 1983, or both. "To state a retaliation claim, consisting of the same elements under Title VII and the First Amendment, a plaintiff must prove that: (1) she engaged in a protected activity; (2) that the employer took an adverse employment action against her; and (3) that the two situations are causally connected." *Okruhlik v. Univ. of Arkansas*, 395 F.3d 872, 878 (8th Cir. 2005) (citing *Kipp v. Mo. Hwy. & Transp. Comm'n*, 280 F.3d 893, 896 (8th Cir. 2002)).

Regardless of the statutory basis for Wainwright's retaliation claim, her claim fails because she presents no evidence of any causal connection between her report of the racial slur in March of 2011 and the termination of her employment in November of 2011. There is no genuine dispute of material fact on Wainwright's retaliation claim. *Cf. Hill v. Walker*, 737 F.3d 1209, 1219 (8th Cir. 2013) (holding that there was no genuine dispute of fact for trial where an employee was discharged for failing to return to work). Even if Wainwright had presented evidence to establish a prima facie case, her retaliation claim would fail because she cannot show that Davis Life Care Center's stated reason for terminating her employment was a pretext for retaliating against her. *Brown v. City of Jacksonville*, 711 F.3d 883, 894 (8th Cir. 2013).

Moreover, any claim under section 1983 would fail for the additional reason that Davis Life Care Center was not acting under color of state law. *Movie Systems, Inc. v. Heller*, 710 F.2d 492, 496 (8th Cir. 1983).

**F.      Hostile Work Environment**

"Hostile work environment harassment occurs '[w]hen the work place is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Jackman v. Fifth Judicial Dist. Dept. of Correctional Servs.*, 728 F.3d 800, 805 (8th Cir. 2013) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370, 126 L. Ed. 2d 295 (1993)). To determine whether racial harassment is sufficiently severe or pervasive to be actionable, courts consider all of the circumstances, including the frequency and severity of the discriminatory conduct, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with the employee's work performance. *Helton v. Southland Racing Corp.*, 600 F.3d 954, 959 (8th Cir. 2010). The standard for demonstrating a hostile work environment under Title VII is demanding; Title VII does not prohibit all verbal or physical harassment and it is not a general civility code for the American workplace. *Wilkie v. Dept. of Health & Human Servs.*, 638 F.3d 944, 953 (8th Cir. 2011).

Wainwright's evidence that she was subjected to a hostile work environment consists of her affidavit and an affidavit of a co-worker. In her affidavit she says, "a supervisor yelled and screamed at me in front of other employees, and started treating me differently all because I was offended by the racially charged statement." Document #20-1. The affidavit from the co-worker states that on one occasion, an administrator "yelled and screamed at . . . Ms. Wainwright in front of other

employees, and started treating Ms. Wainwright differently." Document #20-5 at 1. That same affidavit reports another occasion in which a white employee called a Hispanic employee a racially derogatory term and states that there were instances of an employee using racially derogatory terms toward African American residents and certified nursing technicians. *Id*. at 2. On another occasion, a white employee made a comment regarding African American employees who were waiting to clock in, stating, "look at them standing up there as if they are waiting on Welfare cheese." *Id*.

These few incidents are not severe or pervasive and therefore do not effect a term, condition, or privilege of employment. *Jackman*, 728 F.3d at 806; *see also Helton*, 600 F.3d at 959-60.

### G. Outrage

The Court may decline to exercise supplemental jurisdiction over state-law claims after dismissing all of the claims that arise under federal law. 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Melon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 619 n.7, 98 L. Ed. 2d 720 (1988).

Here, however, the only state-law claim that does not duplicate a claim under federal law is Wainwright's claim based on the tort of outrage. That claim is without merit.

> To establish a claim for outrage, a plaintiff must demonstrate the following elements: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous, was beyond all possible bounds of decency, and was utterly intolerable in a civilized community; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Calvary Christian School v. Huffstuttler*, 367 Ark. 117, 129, 238 S.W.3d 58, 68 (2006) (quotation marks and citations omitted). The Arkansas courts have taken a particularly narrow view of tort of outrage claims brought by discharged employees. *See* Howard W. Brill, Arkansas Law of Damages § 33:13 at 645 and n.12 (5th ed. 2004) (collecting cases in which an outrage claim by a discharged employee failed). The conduct of Davis Life Care Center falls far short of the kind of extreme and outrageous misconduct needed to establish this tort.

Moreover, although Davis Life Care Center moved for summary judgment on Wainwright's outrage claim, Document #11 at 4, Wainwright never mentions this claim in her response, so it appears that she has conceded this claim.

In this circumstance, judicial economy, convenience, fairness, and comity do not point toward declining jurisdiction over the remaining state-law claims. Rather, those factors point toward exercising supplemental jurisdiction and granting summary judgment on all of Wainwright's state-law claims, both her statutory claims, which are governed by the same principles as her claims under federal law, and her outrage claim, which is without merit and which Wainwright apparently has conceded.

## CONCLUSION

For the reasons stated above, the defendant's motion for summary judgment is GRANTED. Document #10. Janie R. Wainwright's complaint is dismissed with prejudice.

IT IS SO ORDERED this 15th day of January, 2014.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE